**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REMIGIO CASANOVA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. CV 14-2265-JPR<br><br>**MEMORANDUM OPINION AND ORDER**<br>**AFFIRMING COMMISSIONER** |

**I.　PROCEEDINGS**

　　Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed February 9, 2015, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

**II.   BACKGROUND**

Plaintiff was born on May 18, 1966. (Administrative Record ("AR") 211, 262.) He completed 12th grade (AR 56, 269) and worked as a heavy-equipment operator for a construction company (AR 71-72, 270).

In February 2005, Plaintiff filed applications for benefits, which were denied by an Administrative Law Judge in a written decision dated July 17, 2007. (AR 34, 104-117.) On February 11, 2010, Plaintiff submitted an application for SSI, alleging that he had been unable to work since April 1, 2005, because of "COPD," "Depression, anxiety, insomnia," "Limited mobility, use of a walker," "Diabetes, neuropathy in hands and feet," "Deep Vein Thrombosis," "Syncope," "GI Problems," "Guillain Barre [sic] Syndrome," "Chronic pain and cramping," "chronic fatigue," and "heart problems."[1] (AR 211-17, 262, 268.) After his application was denied initially and on reconsideration, he requested a hearing before an ALJ. (AR 143.) A hearing was held on December 16, 2011, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 52-77.) In a written decision issued January 26, 2012, the ALJ found Plaintiff not disabled. (AR 34-51.) On February 4, 2014, the Appeals

---

[1] Guillain-Barré syndrome ("GBS") is a disorder in which the body's immune system attacks part of the peripheral nervous system, causing weakness and tingling in the legs and sometimes in the arms and upper body. See Guillain-Barré Syndrome Fact Sheet, Nat'l Inst. of Neurological Disorders & Stroke, http://www.ninds.nih.gov/disorders/gbs/detail_gbs.htm (last updated Apr. 17, 2015). These symptoms can increase until some muscles cannot be used at all, and the disease is potentially life threatening, but most individuals make a good recovery from even the most severe cases of GBS. Id.

Council denied Plaintiff's request for review. (AR 1-4.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected

to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, he is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 416.920(a)(4); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

  B. The ALJ's Application of the Five-Step Process

  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 9, 2010, his application date.[3] (AR 38.) At step two, he concluded that Plaintiff had the severe impairments of "chronic obstructive pulmonary disease," "diabetes and hypertension," "obesity," "history of Gullain-Barre [sic] syndrome," and "depressive disorder." (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (Id.) At step four, he found that

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Plaintiff's actual application date appears to have been February 11, 2010. (See AR 211.)

5

Plaintiff had the RFC to lift and carry 10 pounds occasionally and five pounds frequently; stand and/or walk for two hours in an eight-hour day; sit without significant limitation; perform postural activities occasionally except never climb ropes, ladders, or scaffolds; and perform simple, repetitive tasks. (AR 39.) The ALJ further found that Plaintiff should avoid even moderate exposure to respiratory irritants and all exposure to workplace hazards. (Id.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work but could perform sedentary jobs existing in significant numbers in the national economy. (AR 43-45.) Accordingly, he found Plaintiff not disabled. (AR 45.)

**V.  DISCUSSION**

<u>Any Error in Assessing the Opinion of Nonexamining State-Agency Physician M.D. Morgan Was Harmless</u>

Plaintiff contends that the ALJ erred in assessing the opinion of state-agency physician M.D. Morgan concerning Plaintiff's mental impairments. (J. Stip. at 3-6.) Because any error was harmless, remand is not warranted.

A.   <u>Applicable Law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. <u>Id.</u>

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id. The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. § 416.927(c)(3)-(6). These factors also determine the weight afforded the opinions of nonexamining physicians. § 416.927(e).

B. Relevant Background

In June 2010, Ahmad R. Riahinejad, who had a Ph.D. in psychology, evaluated Plaintiff on behalf of the agency. (AR 620-26.) Plaintiff reported that he had never been psychiatrically hospitalized and was not receiving psychiatric counseling or medication. (AR 621.) Dr. Riahinejad noted Plaintiff's "slightly insufficient effort," "evidence of psychomotor slowing," "depressed mood," and short attention span. (AR 622.) Dr. Riahinejad reported Plaintiff's scores on the Weschler Adult Intelligence Scale-IV to be between 60 and 74, with a full-scale IQ score of 63, "plac[ing] him in the mildly mentally retarded range of functioning," but he noted that the scores "appear[] to be an underestimate" of Plaintiff's intellectual functioning. (AR 623.) Plaintiff was unable to complete the Trail Making Test because he apparently could not follow the instructions. (Id.) He obtained normal scores on the

Weschler Memory Scale III and Bender-Gestalt II tests.  (AR 623-24.)

Dr. Riahinejad noted probable diagnoses of "Depressive Disorder, Associated with Medical Condition," and "Rule Out Mental Retardation, Mild."  (AR 624.)  He noted, however, that because Plaintiff did not "put his best effort into the testing," his intellectual ability was "undetermined" and it was "difficult to comment on his work-related ability."  (Id.)  Based on Plaintiff's presentation at the examination, he was able to manage his own funds; understand, remember, and carry out simple, repetitive instructions; and relate with others and accept supervision.  (AR 623-24.)  Dr. Riahinejad opined that Plaintiff had "significant difficulty" with complex instructions and would have difficulty maintaining a "fast-paced" job.  (AR 624.)  He also opined that Plaintiff's medical conditions "may interfere with his persistence in a work-like situation."  (AR 624-25.)

On June 25, 2010, state-agency physician M.D. Morgan completed a Psychiatric Review Technique (see AR 699-709), opining that Plaintiff had a depressive disorder that caused mild restriction in activities of daily living, no restrictions in social functioning, and moderate difficulty maintaining concentration, persistence or pace (AR 707).  His assessment was based solely upon Dr. Riahinejad's report.  (See AR 709.)  The same day, Dr. Morgan completed a Mental Residual Functional Capacity Assessment, finding marked limitations in understanding, remembering, and carrying out detailed instructions and "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms and . . . perform[ing] at a

consistent pace without an unreasonable number and length of rest periods." (AR 710-12.) Dr. Morgan found that Plaintiff was otherwise not significantly limited by his mental impairments and was "[a]ble to complete a normal workday/workweek, performing simple repetitive tasks." (Id.)

On December 24, 2010, state-agency physician Herbert Ochitill reviewed Dr. Morgan's findings and indicated disagreement with them regarding Plaintiff's capacity for sustained concentration and persistence. (AR 716.) Dr. Ochitill found that Dr. Morgan's assessment of marked limitation in completing a normal workday and workweek and in performing at a consistent pace was inconsistent with his notation in the same report that Plaintiff could complete a normal workday and workweek and his indication in the Psychiatric Review Technique of only moderate difficulties in maintaining concentration, persistence, or pace. (AR 717; compare AR 711 with AR 707, 712.)

C.  Analysis

The ALJ found that Plaintiff had a severe depressive disorder causing mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence, and pace. (AR 38-39.) The ALJ indicated that he "accept[ed], generally," the assessments of Drs. Riahinejad, Morgan, and Ochitill, who agreed that Plaintiff "should be limited, effectively, to simple repetitive tasks." (AR 40.) The ALJ further noted that although Plaintiff alleged depression and other psychological impairments (AR 268, 441), he denied significant emotional or psychiatric symptoms at the hearing (AR 65-66), and the record contained no evidence of psychiatric

treatment and only "isolated mention" of psychiatric symptoms (AR 41; see AR 972 (records of treatment for complaints of joint pain, indicating "mild" anxiety caused by medical condition)).

Plaintiff challenges only the ALJ's assessment of Dr. Morgan's opinion, contending that the ALJ erred in failing to address his finding that Plaintiff was markedly impaired in his ability to maintain a normal workday or workweek and to perform at a consistent pace. (J. Stip. at 4; see AR 711.) As noted above, however, although Dr. Morgan checked a box to indicate marked limitation in those areas, he indicated in the same document that Plaintiff was capable of completing a regular workday and workweek as long as he was limited to simple, repetitive tasks, and he further noted only moderate restrictions in maintaining concentration, persistence, or pace in a document completed the same day. (AR 707, 712.) As Dr. Ochitill noted upon reconsideration of Plaintiff's mental impairments, Dr. Morgan's indication of marked limitations was inconsistent with the rest of his report (AR 717) — unless interpreted, reasonably, as applying only to complex tasks and instructions. Thus, the ALJ reasonably relied on Dr. Morgan's finding that Plaintiff was "[a]ble to complete a normal workday/workweek, performing simple repetitive tasks." (AR 712.)

Moreover, the ALJ noted that Plaintiff's "[i]nconsistent statements and actions" and limited effort on both physical and mental testing significantly undermined the credibility of his allegations. (AR 42); see Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (noting that statements that are inconsistent or "less than candid" may undermine allegations);

10

Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (holding that "fail[ure] to give maximum or consistent effort during two physical capacity evaluations" detracted from credibility of allegations). Plaintiff's underperformance also detracted from the reliability of the relevant medical-opinion evidence to the extent it encompassed marked limitations. In particular, the ALJ noted that the validity of Plaintiff's full-scale IQ score of 63 was undermined by Dr. Riahinejad's finding of less than full effort on intellectual testing, Plaintiff's graduation from high school without special-education coursework, and his "advocat[ing] aggressively and submitt[ing] several lengthy, specific and detailed reports in support of his disability claim." (AR 42; see AR 623 (Dr. Riahinejad noting that IQ scores appeared to "underestimate" Plaintiff's functioning); AR 276-78, 287-93, 332-50, 374-95, 423-33, 439-43, 468-73, 475-77, 479-81 (Plaintiff's handwritten submissions).) Because the medical evidence of Plaintiff's mental impairments consisted essentially of a single examination during which he put forth inadequate effort, the examining doctor was unable to determine Plaintiff's intellectual capacity based on his test performance, and Plaintiff's conduct outside the examination belied his poor test results, the ALJ reasonably found that Plaintiff's performance on IQ testing was "suspect." (AR 42); see Soto v. Sec'y Health & Human Servs., 795 F.2d 219, 222 (1st Cir. 1986) (per curiam) (holding that ALJ need not accept IQ score if substantial basis existed for believing that plaintiff feigned results); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (noting that even "a valid I.Q. score need not be conclusive of mental retardation

where the I.Q. score is inconsistent with other evidence in the record in the claimant's daily activity and behavior").

Plaintiff also contends that the ALJ erred in failing to specify the weight given to each mental-health doctor's opinion. (J. Stip. at 4.) This is required under the agency's rules, and it may have been error not to do so. See SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996); § 416.927(e)(2)(ii) (noting that unless treating physician's opinion is given controlling weight, ALJ must explain weight given to state-agency physicians' opinions). But even assuming error, it was harmless. Although the ALJ did not use the term "weight" in explaining his assessment of the medical-opinion evidence, he did indicate that he "accept[ed]" or "generally" "accept[ed]" the findings of all three doctors and explained his reasons for discounting certain findings. (See AR 40-42.) Given that all three doctors were mental-health specialists, opined based only on Plaintiff's questionable performance at the consulting exam, and provided very similar assessments, the ALJ had only one basis upon which to distinguish the weights given their opinions — namely, that Dr. Riahinejad examined Plaintiff, whereas Drs. Morgan and Ochitill merely reviewed the results of that examination. Because the ALJ indicated his reasons for accepting or discounting the doctors' findings and incorporated those findings he accepted into Plaintiff's RFC, his failure to assign a specific weight to those opinions was harmless error. See SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996) (noting that ALJ must "give good reasons . . . for the weight given" to an opinion); § 416.927(e); Carmickle, 533 F.3d at 1162 (holding ALJ's error

12

Case 2:14-cv-02265-JPR Document 22 Filed 05/07/15 Page 13 of 13 Page ID #:1191

harmless as long as substantial evidence supports ultimate conclusion); <u>Keyes-Zachary v. Astrue</u>, 695 F.3d 1156, 1161-66 (10th Cir. 2012) (affirming finding of nondisability despite ALJ's failure to specify weight given to some medical opinions because ALJ's reasoning was clear and correct and "[m]erely technical omissions in the ALJ reasoning do not dictate reversal"); <u>see also</u> <u>Kellerman v. Astrue</u>, No. C 11-4727 PJH, 2012 WL 3070781, at *14-15 (N.D. Cal. July 27, 2012) (finding error in failing to attribute specific weight to doctor's opinion harmless because ALJ's reasoning in crafting RFC sufficiently explained).

Plaintiff is not entitled to remand.

**VI. CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 7, 2015

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[4] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."